## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

```
JEFF MONEY,                            )
                                       )
     Plaintiff,                        )
                                       )
     v.                                )
                                       )   1:14-cv-00253
KENDALLVILLE PLACE                     )
APARTMENTS, PHASE II, LLC,             )
d/b/a NELSON ESTATES                   )
APARTMENTS, PHASE II,                  )
                                       )
     Defendant.                        )
```

## OPINION AND ORDER

This matter is before the Court on "Kendallville Place Apartments, Phase II, LLC, d/b/a Nelson Estates Apartments, Phase II Motion for Summary Judgment," filed by the defendant, Kendallville Place Apartments, Phase II, LLC, d/b/a Nelson Estates Apartments, Phase II, on July 20, 2015. (DE #27.) For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**. With no federal claims now before it, this Court declines to exercise jurisdiction on the plaintiff's state law claim, and, therefore, that state law claim is **DISMISSED** without prejudice. Because no claims remain pending, this case is **DISMISSED**, and the Clerk is **DIRECTED** to enter judgment in favor of the defendant, Kendallville Place Apartments, Phase II, LLC, d/b/a Nelson Estates Apartments, Phase II, and close this case.

BACKGROUND

On July 24, 2014, Jeff Money ("Money") filed a complaint against Kendallville Place Apartments, Phase II, LLC, d/b/a Nelson Estates Apartments, Phase II ("Nelson Estates") in the Noble Superior Court, Noble County, Indiana (cause number 57D01-1407-CT-009) alleging claims under "Title II of the Americans with Disabilities Act ("ADA")." (DE #6.) On August 19, 2014, Nelson Estates filed a notice of removal. (DE #1.) On October 6, 2014, Money filed an amended complaint, alleging that Nelson Estates violated his rights under the Fair Housing Amendments Act, 42 U.S.C. section 3601 *et seq*. ("FHAA"), and that Nelson Estates was negligent as a matter of Indiana law. On November 3, 2014, Nelson Estates filed its answer. (DE# 20.) On July 20, 2015, Nelson Estates filed the instant motion for summary judgment. (DE #27.) In support of its motion, Nelson Estates has offered factually relevant portions of Money's deposition transcript. Money has failed to respond.

DISCUSSION

Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

2

dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary

judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Local Rule 56-1 describes the specific obligations of both the moving party and the non-moving party when a motion for summary judgment is filed. The moving party must file a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56-1(a). The party opposing the motion must respond within twenty-eight days with a "Statement of Genuine Disputes" that sets forth the "material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2). A failure to respond as required by the local rules constitutes an admission. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 689 (7th Cir. 2000). However, even when an opposing party fails to respond to a summary judgment motion altogether, Federal Rule of Civil Procedure 56(e) permits judgment for the moving party only if the movant is entitled to it. In other words, summary judgment may only be granted "*if appropriate*—that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 392 (7th Cir. 1995) (quoting *Johnson v. Gudmundsson,* 35 F.3d 1104, 1112 (7th Cir. 1994) (emphasis in original).

Because Money has failed to file a response and has not identified any material disputes, the facts as claimed and properly supported by Nelson Estates in its Statement of Material Facts are deemed admitted to exist without controversy. This Court has reviewed the following facts and finds that they are adequately supported with appropriate citations to admissible evidence in the record. While Nelson Estates' Statement of Material Facts is approximately 2 pages in length, this Court need not restate each and every fact that is deemed admitted; only the facts that are pivotal in resolving the instant motion are included in this order.

Facts

In 2000, Money moved into a Nelson Estates apartment to care for his ill mother who also resided there. (Money Dep., DE# 29-1, pp. 2-3.) At that time, Money's mother owned a vehicle, but Money himself did not own a vehicle. (*Id*. at 4.) According to Money, Nelson Estates provided its tenants with two handicapped parking spaces at the end of Money's building. (*Id*. at 13.) Both of these handicapped parking spaces were equipped with access aisles that were demarcated with blue lines painted on the pavement. (*Id*. at 15.) In addition to these two general handicapped parking spots, Nelson Estates reserved a parking spot for Money directly in front of the door to his apartment. (*Id*. at

4.) That spot was marked by a four-by-four post that displayed a handicap placard. (*Id*. at 7.)

Money testified that he made repeated requests to Nelson Estates that it paint blue striped access aisles next to his reserved spot in order to provide him with greater access to vehicles. (*Id*. at 14-15.) However, he is unclear exactly when he made these requests. (*Id*.) According to Money, Nelson Estates repeatedly denied his requests for the blue striped access aisles because the facility did not have enough parking spaces for the other tenants as it was. (*Id*. at 16.) In addition, Nelson Estates informed Money that his request would impose an inconvenience to the other tenants. (*Id*. at 14, 16.) Nelson Estates has both handicapped and non-handicapped tenants alike who compete for the limited available spots at the facility. (*Id*. at 13, 17, 18.)

In 2008, when Money's mother passed away, he took possession of his mother's vehicle. (*Id*. at 3, 5.) From then on, until the vehicle was donated by Money in 2012, the vehicle never moved. (*Id*. at 5.) Nelson Estates had allowed Money to continue to park the vehicle in his reserved spot, despite the fact that Money was without a driver's license and had been since 2006. (*Id*. at 2, 5.) Money testified that, during this time, either his friend or sister would pick him up to take him places. (*Id*. at 5.)

After Money donated the vehicle, he testified that his reserved parking spot would repeatedly be occupied by other

6

vehicles in the complex.  (*Id.* at 17.)  However, in response, Nelson Estates began the practice of placing an orange cone out in the parking lot to keep vehicles from parking in front of Money's apartment and so that he could "have the other parking spot for medical transportation or [when] people were coming to pick [him] up to take [him] to the hospital."  (*Id.*)

On August 3, 2012, Money's sister arrived at Money's apartment at Nelson Estates to take him to breakfast.  (*Id.* at 5-6.)  She parked in front of Money's apartment.  (*Id.* at 6-7.)  Money exited his apartment in his wheelchair.  (*Id.* at 8.)  He had been using the wheelchair since January 2012 while he was healing from a meniscus injury.  (*Id.* at 11-12.)  Money could not get his wheelchair between the vehicles, so he got out of the wheelchair and walked to the passenger door of the vehicle.  (*Id.* at 9-11.)  He did not ask his sister to assist him.  (*Id.* at 10.)  Money's leg gave out, he fell, and he suffered an injury.  (*Id.* at 11.)  Money remained a tenant at Nelson Estates until his lease was terminated on February 15, 2014.  (*Id.* at 3.)

Analysis

*Fair Housing Amendments Act*

Under the FHAA, it is prohibited to prevent a disabled individual from buying or renting private housing because of his or her disability.  *Wis. Cmty. Servs., Inc. v. City of Milwaukee*,

465 F.3d 737, 748 (7th Cir. 2006); see generally 42 U.S.C. § 3604. Such an individual must also be provided reasonable "accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [them] equal opportunity to use and enjoy a dwelling." *Id.*; see 42 U.S.C. § 3604(f)(3)(B); see also *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001). To prevail on an FHAA accommodation claim, a disabled plaintiff must establish that a requested accommodation, that was both reasonable and necessary to afford him an equal opportunity to use and enjoy his dwelling, was denied. See *Wis. Cmty. Servs., Inc.*, 465 F.3d at 749; *U.S. v. WHPC—DWR, LLC*, 491 Fed. Appx. 733, 736 (7th Cir. 2012).

In this case, Money claims that Nelson Estates violated his rights under the FHAA because it failed to make reasonable accommodations with respect to the rules, policies, practices, and services regarding wheelchair accessibility to its disabled tenants. Nelson Estates, however, argues that summary judgment is appropriate because, even assuming arguendo that Money was disabled, requested an accommodation, and was denied such accommodation, his request that blue lines be painted around his assigned parking space was neither reasonable nor necessary to allow Money an equal opportunity to use and enjoy the premises.

1. Reasonable Accommodation

The determination of whether a requested accommodation is reasonable is highly fact-specific and must be decided on a case-by-case basis. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995) (citing *U.S. v. Vill. of Palatine*, 37 F.3d 1230, 1234 (7th Cir. 1994)). "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Wis. Cmty. Servs., Inc.*, 465 F.3d at 749. "Implicit nonetheless in the text of the FHAA is the understanding that while reasonable accommodations to achieve necessary ends are required, some accommodations may not be reasonable under the circumstances and some may not be necessary to the laudable goal of inclusion." *Bronk*, 54 F.3d at 428-29. "An accommodation is unreasonable if it either imposes undue financial and administrative burdens or requires a fundamental alteration in the nature of a program." *Erdman v. City of Ft. Atkinson*, 84 F.3d 960, 962 (7th Cir. 1996) (internal quotation marks and citation omitted).

Here, because Nelson Estates refused Money's request that it create access aisles around his reserved space by painting the

area with blue stripes to provide him with better access transport vehicles, this Court must balance the burden on Nelson Estates to accommodate that request against the benefit provided to Money under the applicable circumstances in order to determine whether Money's request was reasonable.

First, the Court notes that it is undisputed that Money was provided with a reserved parking spot directly in front of his building, despite the fact that he had neither a vehicle since 2012, nor a driver's license since 2006. It is also undisputed that there were two additional handicapped parking spots at the end of the building, complete with blue striped access aisles. The record shows that parking space in general was limited at the apartment complex and that Nelson Estates communicated to Money that it did not have enough parking at the facility as it was. In addition, Nelson Estates informed Money that his request would impose an inconvenience to the other tenants at the facility. During his deposition, Money himself acknowledged both the limited parking at Nelson Estates and the competition that exists between the handicapped and non-handicapped tenants alike for all available spots at the facility. Under these circumstances, delineating blue striped access aisles around Money's reserved space and further limiting parking to other residents would undoubtedly be burdensome to Nelson Estates.

Second, with regard to the benefit to Money, the record shows that Money requested that Nelson Estates provide him with blue painted stripes next to his reserved space for the purpose of providing him with sufficient space to access transportation vehicles. The benefit to Money can be best understood by parsing the form from the substance. As a matter of form, Money's request was for Nelson Estates to paint the area around his reserved parking spot with blue stripes. However, as a matter of substance, the purpose of the request was for a sufficient area to access his transportation vehicles. Nothing in the FHAA or relevant regulations creates an absolute right to blue lines to be painted next to a disabled tenant's reserved space, so the FHAA does not require Nelson Estates to give strict adherence to the particular form of Money's request. Rather, under the FHAA, the accommodation need only be reasonable under the circumstances. Here, the record shows that in addition to assigning Money a parking spot in front of his apartment, Nelson Estates began the practice of placing an orange cone out in the parking lot in front of Money's apartment for the purpose of ensuring that Money had sufficient space to access transportation vehicles when needed. The orange cone procedure provided sufficient space to access vehicles because the record shows Money successfully utilized this procedure at various times either for medical transport or when others would come to pick him up. Accordingly, if the purpose of Money's request for

blue stripes was to obtain sufficient space to access transportation vehicles, then the orange cone arrangement accommodated the substance of that request. Placing upon Nelson Estates the additional duty to permanently paint the same area with blue stripes would have provided Money with little benefit beyond that already provided by the reserved spot and the orange cone accommodation.

As reconfiguring its already limited parking area to provide Money with an additional area painted with blue stripes would be particularly burdensome on Nelson Estates, and because the benefit to Money beyond that already provided by Nelson Estates would be minimal, the burden on Nelson Estates to do so outweighed the benefit to Money. Thus, Money's requested accommodation was not reasonable under the circumstances. See *U.S. v. Port Liberte Condo 1 Ass'n, Inc.,* No. 04-2783, 2006 WL 2792780, * 7 (D.N.J. Sept. 27, 2006) (reallocation of parking spaces is not a reasonable accommodation in light of legal rights of other condominium owners and in light of engineering realities); *Reyes v. Fairfield Properties*, 661 F.Supp.2d 249, 259 (E.D.N.Y. 2008) ("wholly new construction or modifications of existing premises is not mandated by the reasonable accommodations provision of the FHAA"); *Rodriguez v. 551 West 157th St. Owners Corp.,* 992 F.Supp. 385, 387 (S.D.N.Y 1998) ("reasonable accommodation" includes only an accommodation in the "rules, policies, practices, or services,"

not in "facilities," but even if FHAA did require it, the accommodation must still be reasonable and not impose an undue hardship or substantial burden on the landlord). Because Money has not shown that the accommodation he sought was reasonable, his claim of discrimination must fail. *Oconomowoc Residential Programs*, 300 F.3d at 783.

2. Necessary for equal opportunity

Whether the requested accommodation is necessary requires a "showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Bronk*, 54 F.3d at 429. The requested accommodation must be "'necessary,' meaning that, without the accommodation, the plaintiff will be denied an equal opportunity to obtain the housing of her choice." *Wis. Cmty. Servs., Inc.,* 465 F.3d at 749. The inquiry by the court must delve into causation. *Id*. Furthermore:

> the FHAA links the term 'necessary' to the goal of 'equal opportunity.' 42 U.S.C. § 3604(f)(3)(B). The 'equal opportunity' element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified. Instead, the statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the housing market.

*Id.*

13

The federal regulations promulgated by the United States Department of Housing and Urban Development ("HUD")[1] contain an example of a reasonable and necessary accommodation that is relevant to this case:

> Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation . . . for the owner or manager to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have difficulty getting from his car to his apartment unit. The accommodation therefore is *necessary* to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is *reasonable* because it is feasible and practical under the circumstances.

24 C.F.R. § 100.204(b); see also *U.S. v. WHPC-DWR, LLC.*, 491 Fed. Appx. 733, 737-38 (7th Cir. 2012), *Shapiro v. Cadman Towers, Inc.*, 844 F.Supp. 116, 125 (E.D.N.Y. 1994), aff'd, 51 F.3d 328 (2d Cir. 1995).

In the HUD regulation above, John was mobility impaired and could only walk a short distance. Under the Seventh Circuit

---

[1] HUD regulations are applicable because the Secretary of HUD was given the power to make rules and regulations to carry out the provisions of the FHAA. See 42 U.S.C. § 3614a.

causation standard, without the requested accommodation for a reserved space, John might be unable to live in Progress Gardens at all. As a result, the accommodation was necessary for equal opportunity to use and enjoy the dwelling. In the case at hand, however, while Money is similar to John in that he is mobility impaired, Nelson Estates did in fact provide Money with a reserved spot directly in front of his apartment door. Furthermore, the record shows that upon receiving that reserved parking spot, Money came and went from his apartment for many years. In fact, even when his reserved space was occupied with his own vehicle (which he had not driven since at least 2006), Money testified that he came and went from his apartment despite the fact that the other handicapped spots were always occupied. In addition, in 2012 when Money was in a wheel chair due to a meniscus tear which made mobility to and from vehicles more difficult, the record shows that Nelson Estates would place an orange cone out when requested to do so to ensure Money had an available parking area in front of his apartment for medical transport or some other transportation need. Money utilized this orange cone procedure in the past and certainly could have done so on August 3, 2012, the day of his fall; however, he has presented no evidence that he made such a request on that date.

Finally, the Court notes that the record shows there are other handicapped tenants at Nelson Estates who own vehicles yet, unlike

15

Money, must compete with both handicapped and non-handicapped tenants for the limited parking spots available. Money has testified that he has no vehicle, has no driver's license, had been provided with a reserved spot, and received the orange cone accommodation to ensure the parking space needed for transportation. To force Nelson Estates to provide Money with blue striped access aisles adjacent to his reserved spot would be an accommodation, relative to the other tenants, that goes *beyond* affording him an equal opportunity to use and enjoy the dwelling. Thus, the accommodation request that Nelson Estates equip Money's reserved space with blue stripes was not necessary to allow Money equal opportunity to use and enjoy the premises because it would not have affirmatively enhanced his quality of life by ameliorating the effects of his disability.

In sum, because Money's request that Nelson Estates provide him with blue stripes around his parking spot, in addition to reserving him a spot directly in front of his apartment and providing the orange cone accommodation, was neither reasonable nor necessary under the circumstances, Nelson Estates did not violate Money's rights under the FHAA by failing to accommodate that request, and Money's claim fails as a matter of law. Accordingly, summary judgment must be granted.

*Negligence*

Money has also asserted a state law claim of negligence. As all of his federal claims have been dismissed, this Court declines supplemental jurisdiction over the remaining state law claim, and it is dismissed without prejudice. See e.g. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999).

CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (DE #27) is **GRANTED**. With no federal claims now before it, this Court declines to exercise jurisdiction on the plaintiff's state law claim, and, therefore, that state law claim is **DISMISSED** without prejudice. Because no claims remain pending, this case is **DISMISSED**, and the Clerk is **DIRECTED** to enter judgment in favor of the defendant, Kendallville Place Apartments, Phase II, LLC, d/b/a Nelson Estates Apartments, Phase II, and close this case.

**DATED: March 7, 2016**           **/s/Rudy Lozano**
                                    **United States District Court**